## Moore v. Wenoff

Plaintiff initiated the instant action by filing a complaint against defendants Wenoff, Gross, Rajan and Temple University Hospital on October 6, 1978. An amended complaint was filed on October 30, 1978. On November 13, 1978, defendants filed preliminary objections in the nature of a demurrer to the amended complaint.

In essence, plaintiff claims damages for an allegedly negligent sterilization operation performed by defendants. Plaintiff avers that after the performance of a tubal ligation, the defendants assured her that she could resume normal sexual relations without becoming pregnant. Despite the surgical procedure, plaintiff became pregnant and gave birth to an apparently healthy child. In paragraph 20, plaintiff claims that as a result of defendants' negligence, she "has been and will be obliged to expend various sums for the support and maintenance of plaintiff's minor child . . ."

Defendants' preliminary objections aver that a parent's action for support and maintenance of a normal child is without statutory or common law authority and is contrary to public policy.

Initially, we note that the test for sustaining a demurrer is whether, upon the facts averred, it shows with certainty that the law will not permit a recovery by plaintiff: Sun Ray Drug Co. v. Lawler, 366 Pa. 571, 79 A. 2d 262 (1951). Where a doubt exists as to whether a demurrer should be sustained, the issue should be resolved in favor of refusing to sustain it. Id.

As the parties assert in their briefs, there is presently no appellate authority in Pennsylvania upon the issue known as "wrongful life." A similar issue was decided in Speck v. Finegold, 124 P.L.J. 253 (1976), which has been appealed and argued before the Superior Court. Because the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, as amended, 40 P.S. §1301.101 et seq., requires that a prompt determination and adjudication of claims be rendered, we are compelled to avoid delay and determine the issue before us despite the pending appellate court case.

The narrow question which must be answered is whether a cause of action can be maintained by a parent against a physician whose alleged failure to properly perform a sterilization operation results in the birth of a healthy, albeit unwanted, child. Three common pleas courts have ruled upon this issue: In Shaheen v. Knight, 11 D. & C. 2d 41 (Lycoming Co. 1957), the court determined that public policy prevented a parent from recovering the expenses of supporting, educating and maintaining an "unwanted" child. The court in Brignoni v. Schramm, 43 Northampton 36 (1976), relied upon Shaheen to reach an identical result. However, in a more recent decision, the Common Pleas Court of Dauphin County held that the parents could maintain a cause of action: Liddick v. Sauertieg, 99 Dauph. 262 (1977).

Based upon the current lack of appellate authority and a split in decisions in the courts of common pleas, we cannot say with certainty that the law will not permit a recovery. Thus, defendants' demurrer must be overruled.

Aside from the decision on procedural grounds, we believe that plaintiff should be able to maintain

the cause of action. Although the lower courts in Shaheen, Brignoni and Speck refused to permit the cause of action, we believe that the Liddick decision represents the modern trend. Indicative of this trend are Gildiner v. Thomas Jefferson University Hospital, 451 F. Supp. 692 (E.D. Pa. 1978), and Hartmann v. Jackson, 1 P.C.R. 227 (1978). In both Gildiner and Hartmann, the courts permitted parents to maintain a cause of action for the unwanted birth of a deformed child.

The mere fact that plaintiff's child was apparently born healthy does not defeat her cause of action. "In theory at least, the imposition of civil liability encourages potential tortfeasors to exercise more care in the performance of their duties, and, hence to avoid liability-producing negligent acts. . . . To absolve defendant of all liability here would be to remove one deterrent against [negligence]." Troppi v. Scarf, 31 Mich. App. 240, 187 N.W. 2d 511, 517 (1971). In other words, we can see no valid reason why a surgeon who negligently performs a heart operation should be liable for damages resulting from his conduct while a physician who negligently performs a tubal ligation should escape responsibility for the consequences of his act.

It has been argued that the cause of action should not be permitted because of the difficulty in ascertaining the damages. It is well recognized that courts will not deny recovery simply because of the uncertainty as to the exact damages: Hayes Creek Country Club, Inc. v. Central Penn Quarry Stripping & Construction Company, 407 Pa. 464, 181 A. 2d 301 (1962).

"Here, if it is certain that some damage has resulted from the defendants' alleged negligence . . . mere uncertainty as to the amount of damage

should not preclude the right of recovery. The approved practice is to leave it to the good sense of the jury to form the best estimate that can be made under the circumstances." Betancourt v. Gaylor, 136 N.J. Super. 69, 344 A. 2d 336, 340 (1975) (holding that plaintiffs could maintain an action for damages resulting from the birth of an unwanted, but healthy, child). See also, Custodio v. Bauer, 251 Cal. App. 2d 303, 59 Cal. Rptr. 463 (1967); McAllister v. Pennsylvania R. Co., 324 Pa. 65, 187 Atl. 415 (1936).

The court in Shaheen v. Knight, 11 D. & C. 2d 41 (Lycoming Co. 1957), argued that to permit plaintiffs to recover such damages would require the physician "to pay for the fun, joy and affection which plaintiff Shaheen will have in the rearing and educating of this . . . child." Id. at 45-46. This position, however, does not operate to destroy the right of action; rather it serves as a mitigation of damages. See Stills v. Gratton, 55 Cal. App. 3d 698, 127 Cal. Rptr. 652 (1976). In addition, the issue whether plaintiff has a duty to place the "unwanted" child for adoption is also an issue which may serve to mitigate damages and has no bearing upon whether a cause of action exists. See Troppi v. Scarf, supra.

We note that cases such as Shaheen v. Knight, supra, deny the cause of action because "the blessed event" outweighs the damages plaintiff has suffered. We do not believe that this position is a universal rule of law. Instead, what may be a blessed event for one may be a burden to another. Therefore, we conclude that there is no valid reason why the trier of fact should not have the opportunity to determine plaintiff's damages as it would in any other negligence case.

726

Finally, defendants object to plaintiff's assumpsit cause of action. We note that both the complaint and amended complaint are labeled "Complaint in Trespass." The mere reference to contractual duties does not create an assumpsit action and plaintiff has failed to set forth a separate assumpsit count as required by Pa.R.C.P. 1020. Therefore, there is no assumpsit cause of action before us. Accordingly, we enter the following

### ORDER

And now, May 1, 1979, upon consideration of defendants' preliminary objections filed on November 13, 1978, plaintiff's answer thereto filed on November 30, 1978, and supporting memoranda, it is hereby ordered and decreed that said preliminary objections are overruled.